Nott, J.,
delivered the opinion of the Oonrt.
This is an action brought to recover the value of horses and other property lost in battle, and also certain fees as witness before a court-martial, amounting in the aggregate to $432 60. The facts upon which the case rests arc these :
In 1862 the claimant was a lieutenant in the 71st New York volunteers, an infantry regiment in the command of Major General Hooker. He was also a surgeon by profession, and for that reason “was employed and detailed” by General Hooker “as surgeon in charge of his general hospital at Bottom’s Bridge, Virginia.” “ It was both necessary and proper,” according to General Hooker’s testimony, that he should be mounted with two horses;” and he “was mounted with three horses and equipments, prepared for field service.” “ While thus acting under my orders,” says General Hooker, “ he suffered the loss of three horses, together with the accoutrements, by the enemy.” This loss occurred during the “ Seven Days’ battles” in the Peninsula campaign, “ near Bottom’s Bridge, about the 30th June, 1862,” the claimant at the same time having been taken prisoner. The property captured consisted of three horses, with their equipments, worth *401 $535, and some swords and pistols, worth $130. The claim was presented to the Third 'Auditor, but was refused.
By these facts there are three questions presented to us: 1. Is a lieutenant in an infantry regiment temporarily detailed to perform the duties of a mounted officer entitled to recover for horses lost iu battle? 2. Were these horses captured by the enemy “lost in battle?” 3. What damages may an officer recover for horses and other property lost in the same battle ?
1. With respect to the person entitled to recover for horses lostjn battle, the act of 1849 (9 Stat. L., 414) extends in terms to “ any Jichi, or staff or other officer'’ in the service of the United -States “ who shall sustain damage, without any fault or negligence on his part, while in said service, by the loss of a horse in battle.” This language would seem broad enough to cover the case of every officer who loses a horse in battle, provided that the use of the horse was in the line of his duty at the time. If the use of the horse was not consonant to his proper duties, then there would be both fault and negligence in the officer, and the loss must of course be borne by himself. But if the horse was virtually in the service of the government, and the government actually was reaping a benefit from the horse, then the term any “ other officer” would not only be comprehensive enough to include such a case, but is as broad and general a ■term as Congress could have selected.
But, in addition to the plain import of the language, the context shows that this must have been the intention of Congress. The statute runs thus : “ Any field, staff, or other officer, mounted militiaman, volunteer ranger, or cavalry.” Now, it is apparent that when the act refers to militiamen, volunteer rangers, and cavalry, it requires that they shall be “mounted;” but when it in the same connection applies to officers, it imposes no such condition. By necessary construction, therefore, it includes all officers, whether mounted by virtue of their office or by reason of their particular duties. In other words, wo cannot restrict the benefits of the act to mounted officers when it obviously extends them to all officers, and avoids such a restriction, express or implied.
Finally, the other provisions of the act favor this construction. The first section,! as we have seen, applies to officers and mounted soldiers ; the second extends to “ any person who has sustained damage” by the capture, destruction, or abandonment “ of any horse, mule, ox, wagon, cart, boat, sleigh, or harness, while such property was in the *402 military service of the United States, cither by impressment or contract.” By the two sections it is manifest that Congress intended to pay for all such property which might he lost or destroyed in the actual service of the i United States. It cannot be supposed that Congress intended to discriminate in favor of a contractor who lets out his horses for gain, or a stranger who refuses to let them till they are impressed, and against an officer suffering the loss in the direct line of his duty, and of whom his commanding general testifies “ it wás both necessary and proper that he should be mounted.”
2. With respect to the cause of the damage. The statute enumerates, in the cases of officers and soldiers, several causes of damage: 1st. There is “ the loss of a horse in battle.” 2d. “ The loss of a horse wounded in battle,” and which subsequently dies of the wound. 3d. The loss of a horse wounded in battle which the Owner has “abandoned by order of his officer.” 4th. The loss occasioned “by death or abandonment because of the unavoidable dangers of the sea.” 5th. The loss suffered “ because the'United States failed to supply transportation for the horse, and the owner was compelled by the order of his commanding officer to embark and leave him.” 6th. The loss suffered “ in consequence of the United States failing to supply sufficient forage.” 7th. The loss- occasioned “ because the rider was dismounted and separated from his horse, and ordered to do duty at a station detached from his horse.” 8th. The loss caused by the immediate commanding officer ordering “ the horse turned out to graze in ihe woods, prairies, or commons, because the United States failed to supply sufficient forage.” • In the case of hired and impressed property the statute assigns a number of other causes, among which are “ the capture or destruction by an enemy.” But these causes of damage do not extend to officers or soldiers; and for the claimant it is not sufficient that his horses were captured or destroyed by the enemy, but they must have been lost in battle.
This term “battle” has acquired a restricted meaning among military writers, and is applied by them only to tbe great engagements of armies; but in the law it has a much broader signification, extending from the contest between two individuals, known as “wager of battle,” up to the great conflicts of nations and of armies, and including all skirmishes, engagements, and encounters which, in the course of war, must occur between contending military forces. In this act, where the term is used so unrestrictedly, we should not hesitate to apply it to the case of a single soldier engaging a single enemy, provided that *403 he acted in the strict line of his duty, and the affair was free from doubt and suspicion.
In the case at bar neither of the witnesses states in terms that the horses were lost “ in battle.” General Hooker says: “ Claimant, while acting- under my orders, suffered the loss of three horses, together with the accoutrements, by the enemy, at Bottom’s Bridge, in Virginia, in June,\%Q¡%.” And the witness William W. Powell testifies: “I was also with the army, and was captured with plaintiff, and we were both made prisoners. The plaintiff, at the time of capture, lost three horses.”
The claimant, therefore, lost three horses, and they were lost at the time of bis own capture by the enemy. It is not necessary that he should have been actually engaged against the enemy or under fire; for the act does not say “the loss of a hox-se killed in action,” but “the loss of a horse in battle.” A surgeon is never properly engaged in the actual conflict, and liis duties require that, if possible, he shall not be under fire; yet he is “in battle,” and if he loses his horses under such circumstances, they are horses “lost in battle.” And, therefore, it is sufficient if the claimant can show that the loss of his' horses was the direct result and necessary effect of a battle in which he properly bore a part. Now, so far as this particular case is concerned, we know historically that during the last days of June, 1862, there raged on this Virginia peninsula, for seven days and nights, an almost unceasing battle, and that it included both the time and the place of the claimant’s capture. We therefore think that, notwithstanding the verbal defectiveness of his evidence, he has established his case and is entitled to recover.
3. With respect to the damages to which an officer is entitled for the loss of' his property in battle. In this case the claimant seeks to recover not only for his horses and their accoutrements, but for his swords and pistols. But the statute only essays to make recompense for “the loss of a horse in battle,” “ or for the loss of necessary equipage in consequence of the loss of his horse;” by which we understand it to mean that, in addition to the damages given for the loss of his horse, he may recover for the loss of his necessary horse equipage. A pistol is not. a part of the prescribed arms or uniform of an officer; clothing is sirpposed to be respected by the captor in civilized warfare ; a sword is sometimes respected by an enemy, and is always supposed to be valued and preserved from a principle of honor, and its loss not to be recompensed in money. The claimant cannot recover for these articles.
Mr. A. L. Merriman for claimant.
Mr, J. J. Weed, Assistant Solicitor, for the government.
There is also a limit upon the amount which may bo recovered. Stripped of all unnecessary language, the statute would read thus: “Any field, staff, or other officer engaged in the military service of the United States, who has sustained damage, without any fault or negligence on his part, by the loss of a horse in battle, or for the loss of necessary equipage in consequence of the loss of his horse as aforesaid, shall he allowed and paid the value thereof, not to exceed $200.”'
It may be a question whether the statute was intended to compensate an officer for more than one horse lost in the same battle. But there can he neither justice nor propriety in requiring an officer to provide himself with several, and then, when they are lost, ‘‘without any fault or negligence on his part,” to recompense him for only one. We think that the term “a, horse” is used more with reference to the final limitation of value, and that the meaning is that for every horse, and the accoutrements thereof, prescribed to a mounted officer, or necessarily provided by him for the discharge of his duties, there shall be allowed the value thereof, (i. e., of ‘‘a horse” and equipage,) “not to exceed $200.” It is to he observed that the equipage is not that which the taste or extravagance of an officer may provide, but that which is “necessaryThe evidence, therefore, should show not only its value at the time of capture, hut also that it was such as is prescribed by regulations. In this case the evidence does show that the value of the accoutrements lost was 'about double the amount allowed by the departments. We must reduce the recovery, therefore, to $2S 08, which is the value fixed by the Ordnance,department for such accoutrements. As the three horses lost are shown to have been of three several values, and as the loss is to be borne partly by the claimant and partly by the government, we adopt as the value of each the average value of the three.
Besides this, there is a second claim or cause of action set forth in the petition, being for fees and mileage due to the claimant for attending as a witness before a court-martial. But as there is neither allegation nor proof that this claim was ever submitted to the proper department for settlement, it is not one which we can hear or determine.
The judgment of the court is that the claimant recover $344 74