Richardson, Ch. J.,
delivered the opinion of the court:
The only question of law in controversy between the parties in this case arises upon the interpretation of the fourth section of the Act March 2,1891, chapter 496 (26 Stat. L., 822), which is as follows (the substantial parts involved in the question being here printed in italics):
11 Be it enacted, etc., That it shall be the duty of the Secretary of the Treasury to credit to each State and Territory of the United States and the District of Columbia a sum equal to all collections, by set-off or otherwise, made from said States and Territories and the District of Columbia, or from any of the citizens or inhabitants thereof, or other persons, under the act of Congress approved August fifth, eighteen hundred and sixty-one, and the amendatory acts thereto.
“Sec. 2. That all moneys still due to the United States on the quota of direct tax apportioned by section eight of the act of Congress approved August fifth, eighteen hundred and sixty-one, are hereby remitted and relinquished.
“ Sec. 3. That there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, such sums as may be necessary to reimburse each State, Territory, and the District of Columbia for all money found due to them under the provisions of this act:
“And the Treasurer of the United States is hereby directed to pay the same to the governors of the States and Territories and to the Commissio.üers of the District of Columbia, but no money shall be paid to any State or Territory until the legislature thereof shall have accepted, by resolution, the sum herein *271 appropriated, and tbe trusts imposed, in full satisfaction of all claims against tbe United States on account of tbe levy and collection of said tax, and shall have authorized tbe governor to receive said money for the use and purposes aforesaid:
uProvided, That where tbe sums, or any part thereof, credited to any State, Territory, or tbe District of Columbia have been collected by tbe United States from tbe citizens or inhabitants thereof, or any other person, either directly or by sale of property, such sums shall be held in trust by such State, Territory, or the District of Columbia for the benefit of those persons or inhabitants from whom they were collected, or their legal representatives:
uAnd provided further, That no part of the money collected from individuals and to be held in trust as aforesaid shall be retained by the United States as a set-off against any indebtedness alleged to exist against the State, Territory, or District of Columbia in which such tax was collected:
uAnd provided further, That no part of the money hereby appropriated shall be paid out by the governor of any State or Territory or any other person to any attorney or agent under any contract for services now existing or heretofore made between the representative of any State or Territory and any attorney or agent.
“All claims under the trust hereby created shall be filed with the governor of such State or Territory and the Commissioners of the District of Columbia, respectively, within six years next after the passage of this act; and all claims not so filed shall be forever barred, and the money attributable thereto shall belong to such State, Territory, or the District of Columbia, respectively, as the case may be.
“ Sec. 4. That- it shall be the duty of the Secretary of the Treasury to pay to such persons as shall in each case apply therefor, and furnish satisfactory evidence that such applicant was at the time of the sales hereinafter mentioned the legal owner, or is the heir at law or devisee of the legal owner, of such lands as were sold in the parishes of Saint Helena and Saint Lulcés, in the State of South Carolina, under the said acts of Congress. (12 Stat. L., 294, 422, 640; 14 Stat. L., 568.)

uThe value of said lands in the manner following, to-wit:

11 To the owners of the lots in the town of Beaufort, one-half of the value assessed thereon for a taxation by the United States direct tax commissioners for South Carolina;

uTo the owners of lands vihich were rated for taxation by the State of South Carolina as being usually cultivated, five dollars per aere for each acre thereof returned on the proper tax booh; to the oivners of all other lands, one dollar per acre for each aere thereof returned on said tax booh:

“Provided, That in all cases where such owners, or persons claiming under them, have redeemed ,or purchased said lands, *272 or any part thereof, from the United States, they shall not receive compensation for such part so redeemed or purchased; and any sum or sums held or to be held by the said State of South Carolina in trust for any such owner under section three of this act shall be deducted from the sum due to such owner under the provisions of this section;
“And provided further, That in all cases where said owners have heretofore received from the United States the surplus proceeds arising from the sale of their lands, such sums shall be deducted from the sum which they are entitled to receive under this act.
“ That in all cases where persons, while serving in the Army or Navy or Marine Corps of the United States, or who had been honorably discharged from said service, purchased any of said lands under section eleven of the act of Congress approved June seventh, eighteen hundred and sixty-two; and such lands afterwards reverted to the United States, it shall be the duty of the Secretary of the Treasury to pay to such persons as shall in each case apply therefor, or to their heirs at law, devisees, or grantees, in good faith and for valuable consideration, whatever sum was so paid to the United States in such case.
“That before paying any money to such persons the Secretary of the Treasury shall require the person or persons entitled to receive the same to execute a release of all claims and demands of every kind and description whatever against the United States arising out of the execution of said acts, and also a release of all right, title, and interest in and to the said lands. That there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of five hundred thousand dollars, or so much thereof as may be necessary to pay for said lots and lands, which sum shall include all moneys in the Treasury derived in any manner from the enforcement of said acts in said parishes, and not otherwise appropriated.
“ That section one thousand and sixty-three of the Revised Statutes is hereby made applicable to claims arising under this act without limitation as to the amount involved in such claim:
“And provided further, That any sum or sums of money received into the Treasury of the United States from the sale of lands hid in for taxes in any State under the laws described in the first section of this act [12 Stat. L., 294, 422, 640; 14 Stat. L., 568] in excess of the tax assessed thereon shall he paid to the owners of the land so bid in and resold, or to their legal heirs or representatives.
“Approved, March 2,1891.”
The claimants’lands were in the parish of St. Helena, in the State of South Carolina, ‘and are of the class described in the *273 first part of tbe section, wbicb provides that “ tbe legal owners of such lands as were sold in tbe parishes-of St. Helena and St. Luke’s, in tbe State of South Carolina, under tbe direct tax laws - of Congress,” shall be paid by tbe Secretary of tbe Treasury “tbe value of said lands in tbe manner following, to wit:
“ To tbe owners of tbe lots in tbe town of Beaufort, one-half of tbe value assessed thereon for taxation by the United States direct tax commissioners for South Carolina;
“Tbe owners of lands wbicb were rated for taxation by tbe State of South Carolina as being usually cultivated, $5 per acre for each acre thereof returned on tbe proper tax book;
“To tbe owners of all other lands, $1 per acre for each acre thereof returned on said tax books.”
One of tbe claimants’ two lots (tbe Datba Inlet land), containing 650 acres as returned on tbe proper tax book, sold under tbe direct tax laws, was rated for taxation by South Caro-olina as usually cultivated, and tbe other (tbe Sams pine land), containing 200 acres, as returned on tbe proper tax book, was not so rated. Under these provisions of tbe statutes tbe claimants are entitled to $5 per acre for the former and $1 per acre for tbe latter, after deducting tbe tax and tbe surplus proceeds arising from tbe sale of tbe former, lot heretofore received by them. About this there is substantially no controversy.
But tbe claimants contend that in addition thereto they are entitled to recover under tbe last proviso of tbe section any sums of money received into tbe Treasury of tbe United States from tbe sale of their lands in excess of tbe tax assessed thereon. That is, they claim, under tbe first part of tbe section, applicable to tbe parishes of St. Helena and St. Luke’s only, tbe value of their lands as there fixed after deducting tbe tax, etc., as provided elsewhere in tbe act, and also under tbe last proviso, applicable in general terms to every parish in that State and in every other State, tbe sums received into tbe Treasury from tbe sale of their lands in excess of tbe tax assessed thereon.
It is a well settled rule of interpretation that where a statute makes a special provision, and also a general provision wbicb is broad enough to include tbe former, tbe general provision is neither a repeal of tbe special provision nor an addition to it. They must both stand separate and distinct from *274 each other, the former applicable to the special case and the latter to all others, unless, taking the whole act together, a different interpretation is clearly indicated as the will of the legislators.
In Endlich on the Interpretation of Statutes, page 288 and following, the subject is discussed and many cases cited. One of those referred to is strikingly like the present case.
An act was passed by the legislature of Indiana January 16, 1849, which, among other things, provided that the auditor of the county of La Grange shall receive $700 per annum, which sum shall be in full compensation for all services which he may perform as such officer. The nest day, January 17, 1849, an act was passed by the same legislature, which, after requiring county auditors to perform duties theretofore belonging to the office of school commissioners, provided that for the discharge of such duties they should be allowed one-half of 1 per cent upon the amount of school funds on loan in the respective counties.
This last provision applied in terms to all country auditors, and was broad enough to include the auditor of La Grange County. But the Supreme Court of Indiana held that the two acts must be construed in pari materia, and that “the intention evinced in the statutes under consideration, when taken together, may be stated thus: For services relative to the school funds each county auditor shall receive as a compensation one-half of 1 per cent upon the amount of that fund on loan in his county; provided, the auditor of the county of La Grange shall not be allowed such per centum in addition to his fixed salary of $700.” (Board of Commissioners of La Grange County v. Cutler, 6 Porter (Ind.), 354.)
We find nothing in the act of Congress indicating a different intention.
This view of the statute makes it unnecessary to determine (even if the claimants would be entitled to recover under the last proviso) whether they have sufficiently proved the “ sum or sums of money received into the Treasury of the United States from the sale of lands bid in for taxes.”
As to the first tract of 200 acres (Sams pine land) they have not proved what money, if any, was received into the Treasury. Their attorney argues, that as it was valued by the tax commissioners at $800 the presumption is that it sold for *275 suck sum at least, and therefore the defendants are liable for that amount. Our opinion is that such presumption does not arise on the facts.
As to the other tract (Datha Inlet land) they prove the amount received for 995.37 acres of the 1,300 acres in the whole Datha Island, and they claim their proportional part, without proving directly any particular tract of their land as included in the quantity sold.
On these latter points we express no opinion. Nor do we
express any opinion upon the question whether or not the owners of land in the parishes of St. Helena and St'. Luke may have the right election either to take under the last proviso of section 4 the excess for which the land sold, or under the first part of that section the value per acre as there fixed. We decide now only that they are not entitled to both.
The claimants are entitled to recover as follows:
1. J. Julius Sams one-half of $5 per acre for 650 acres of tie ‘ ‘ D atha Inlet land ”. $1,625.00
• Less one-half surplus proceeds arising from the sale of the lands heretofore received, according to the second proviso of section 4.$181.64
And less also one-half the taxes held or to he held in trust for the State of South Carolina according to the first proviso of section 3.. 26.00
- 207.64
1,417.36
Also one-half of $1 per acre for 200 acres of “Sams pine land”. 100.00
Less amount of tax held in trust as aforesaid_ 8.00
-92.00
1,509.36
2. B. Barnwell Sams, in his own right as assignee of the mortgage on the “Datha Inlet land,” to he applied on his said mortgage, one-half of $5 per acre for 650 acres of said land. 1,625.00
Less one-half surplus proceeds already received and one-half tax as, before stated....... 207.63
1,417.37
3. Grace-L. Sams, C. Whittle Sams, and Fannie Sams, widow and heirs of Horace H. Sams, one-half of $1 per acre for the 200 acres of “Sams pine land,” less tax thereon. 92,00
*276 Subsequently tbe question involved bere was elaborately re-argued in other cases. Tbe majority of tbe court adhered to to tbe construction given to tbe statute in tbe foregoing decision. Nott, J., dissented, bolding that tbe owners of lands in tbe parishes of St. Helena and St. Luke were entitled to tbe u excess ” in tbe Treasury under tbe last proviso to section 4.