Nott, Ob. J.,
delivered tbe opinion of (¡be court:
The petition in this case alleges that in December, 1886, tbe claimant entered a quarter of a section of land in tbe State of Oregon and within tbe boundaries of a grant to tbe Northern Pacific Eailroad Company ; that be paid $2.50 per acre for tbe land contained in his entry; that it was part of an even section raised in price to the double minimum by reason of the railroad land grant; that tbe railroad company never definitely fixed tbe line of tbe road as required by tbe statute authorizing tbe grant, or file a plat thereof, or construct tbe road within tbe time prescribed by law; and that in consequence of this default Congress passed tbe Act 29th September, 1890 (26 Stat. L., 496), forfeiting tbe grant and declaring all lands so forfeited part of tbe public domain. The petition also alleges that tbe claimant has applied to tbe Commissioner of tbe General Land Office for tbe repayment of $1.25 per acre under tbe provisions of tbe second section of tbe act of June 16,1880, which provides that “ in all cases where parties have paid double-minimum price for land which has afterwards been found not to be within tbe limits of railroad land grant, in excess of $1.25 per acre, shall in like manner be repaid to tbe purchaser thereof, or to bis heirs or assigns.” It is also alleged that the Commissioner transmitted the application to tbe Secretary of tbe Interior, who on tbe 2d of April, 1891, denied tbe application.
To this petition tbe defendants have demurred, on tbe ground that tbe cause of action is not within tbe jurisdiction of tbe court. Tbe reason assigned for this by tbe defendants is that tbe remedy afforded tbe claimant by tbe act 16th June, 1880, is exclusive.
This act for tbe relief of certain settlers on tbe public lands and to provide for tbe repayment of certain fees, purchase money, and commissions paid on void entries of public lands (21 Stat. L., 287) enacts that “in all cases where it shall, upon due proof being made, appear to tbe satisfaction of tbe Secretary of tbe Interior that innocent parties have paid tbe fees and commissions and excess payments required upon tbe location of claims,” etc., “tbe Secretary of tbe Interior is authorized to repay to such innocent parties tbe fees and commissions and excess payment paid by them,” etc.
*184 The statute also enacts (§2)-that where entries “shall hereafter be canceled for conflict, or where from any cause the entry has been erroneously allowed and can not be confirmed, the Secretary of the Interior shall cause to be repaid to the person who made such entry, or to his heirs or assigns, the fees and commissions, amount of purchase money, and excesses paid upon the same,” etc., “ and in all cases' where parties have paid double-minimum price for land which has afterwards been found not to be within the limits of a railroad land grant, the excess of $1.25 per acre shall in like manner be repaid.” The Secretary of the Interior is authorized to make the payments out of any money in the Treasury not otherwise appropriated; and the Commissioner of the General Land Office is to make all necessary rules to carry the provisions of the act into effect.
In support of the demurrer the counsel for the Government contends that where a right is given by statute and a specific remedy provided the right can be vindicated in no other way than that prescribed by the act; that if the statute gives a remedy in the affirmative without a negative, express or implied, for a matter actionable at common law, the party may sue at the common law as well as upon the statute; but when a right is solely and exclusively of legislative creation, such as the right conferred by this act of June 16,1880, then jurisdiction is limited to the particular tribunal provided for its enforcement, and jurisdiction can be exercised and the remedy pursued only in the precise forum and in the exact manner provided in the statute. The counsel for the claimant contends that the action can be maintained in this jurisdiction because the claim which is its subject is founded upon a law of Congress. It is urged that a right has been created by Congress which should not be permitted to fail by reason of the opposition of the officer whose duty it is to carry out the will of Congress. The cases of the United States v. Taylor, 104 U. S. R., 216; United States v. Kaufman, 96 id., 567, and others are relied upon to sustain this position.
The grant of jurisdiction to this court of all claims founded upon any act of Congress (Rev. Stat., §1059; the Tucker Act, 1887, 24 Stat. L., 505, § 1) is broad and general in terms and at first sight seems to include every claim created by *185 statute; but at an early day it was beld that this grant of jurisdiction did not extend to cases for wbicli a specific jurisdiction bad been provided by an earlier statute. (Nicoll's Case, 7 Wall. R., 122.) Since then many questions bave arisen relating to these exceptions to jurisdiction and to exceptions to the exceptions; and many decisions have consequently been rendered. They may be classified as follows:
1. Where Congress create a class of claims such as the customs cases, the internal-revenue cases, the pension cases, and provide a jurisdiction for the ascertainment and allowance of such' claims, that jurisdiction is exclusive. (Nicoll’s Case, 7 Wall., 122; Turner’s Case, 9 C. Cls. R., 367; Boughton’s Case, 12 C. Cls. R., 330; Ramsey’s Case, 14 id., 367; Kellogg’s Case, 15 id., 372; Mayes, admr., v. United States, 12 Wall., 177; Daily’s Case, 17 C. Cls. R., 144.)
2. But where the officer clothed with authority to investigate and allow determines the facts of a case and refers it to this court for the determination of a question of law thereby presented, or where the officer, having allowed a claim, transmits it to the accounting officers for payment and they, or the Secretary of the Treasury, refuse to give effect to the award, an action thereon will lie in this court. (Kaufman’s Case, 11 C. Cls. R., 659; affirmed, 96 U. S., 567; Stotesbury’s Case, 23 C. Cls. R., 285; affirmed, 146 U. S., 196; Brigg’s Case, 15 C. Cls. R., 48; Bank of Greencastle’s Case, 15 ib., 225; Real Estate Savings Bank’s Case, 16 C. Cls. R., 335; affirmed, 104 U. S., 728; Nixon’s Case, 18 C. Cls. R., 448; Dupasseur’s Case, 19 id., 1; Sybrandt’s Case, 19 ib., 461; Ramsey’s Case, 21 id., 443; Horton’s Case, 31 id., 148.)
3. Where Congress create a class of claims, such as for horses and vessels lost or destroyed in the military service, and refer the claims for investigation and settlement to the accounting-officers of the Treasury, no jurisdiction to finally determine a legal right is created, and the accounting officers act simply in their usual capacity of auditing officers, and this court has jurisdiction of the claims. (Powell’s Case, 1 C. Cls. R., 400; Bogert’s Case, 3 id., 18; Shaw’s Case, 9 id., 388; affirmed, 93 U. S., 235; New Mexico Horse Cases, 16 id., 550, 559.)
4. Where Congress create a class of claims, such as claims for a surplus in the Treasury derived from property sold for *186 taxes, or tbe direct-tax cases, with directions to the Secretary of the Treasury to pay the amount found to be due to the persons entitled thereto, no special jurisdiction is thereby created and an action will lie in this court. (Irene Taylor’s Case, 14 C. Cls. R., 339; affirmed, 104 U. S., 216; Sams’s Case, 27 C. Cls. R., 266; affirmed in McKee’s Case, 164 U. S., 287; Glover’s Case, ib., 294; Elliott's Case, 373.)
5. Where Congress pledge the faith of the United States in consideration of a person doing some act, such as that in the drawback cases, or in the sugar-bounty cases, presenting thereby an obligation in the nature of an implied contract, the action of the Secretary of the Treasury, or of the revenue officers, is not conclusive, and an action will lie upon the statutory obligation of the Government. (Campbell’s Case, 107 U. S., 407; Glynn’s Case (ante, p. 82); United States v. Realty Co., 163 U. S., 427; Swift’s Case, 105 id., 691; Swift’s Case, 111 id., 22.)
If in the case now before the court there had existed a right of action at common law, or a claim created by some statute anterior to the act of June 16, 1880, the proceedings prescribed by that act before the Interior Department would be regarded as an auxiliary remedy — as a quick and simple proceeding to enable claimants speedily to procure redress. But the court is of the opinion that no such right existed. The claimant’s land was within the purview of a railroad grant at the time of his purchase; the statute fixed the price of such land at $2.50 per acre; both parties regarded $2.50 per acre as the value of the land at that time and in its then condition, and the Government did not guarantee performance on the part of the railroad grantee. When Congress annulled the grant and the reserved sections dropped back into the public domain, it was the result of the railroad company’s inaction, and not an act of voluntary interference on the part of the Government.
If the claim was created exclusively by the act of 1880, it seems equally clear to the court that the case comes within the first snbdivision of jurisdictional cases above set forth; that the statute provided a forum for the prosecution of the claim; that that forum was not intended to be auxiliary, and that it must be held to have exclusive jurisdiction of these claims. As was said by the Supreme Oourt in the Nicoll Case, the means *187 afforded by the statute for obtaining redress “constitute a system,” and the claimants whose rights depend entirely upon that statute can obtain redress only by the means which it has provided.
The judgment of the court is that the demurrer be sustained and the petition of the claimant be dismissed for want of jurisdiction.