Campbell, Chief Justice,
delivered the opinion of the court:
This is a suit by a railroad company asking judgment for an amount, determined by an order of the Interstate Commerce Commission, as compensation for the transportation of mails and services connected therewith. The facts are stipulated and a short history of them showing the cause of the suit may be stated as follows: The carrier was engaged in the service mentioned under the act of July 28, 1916, 39 Stat. 429, that requires railway common carriers to transport mail matter offered by the Postmaster General and provides a method for determining “ a fair and reasonable compensation” for the service.
The commission had made an order fixing the compensation effective December 23, 1919, and the carrier was in the performance of the required service receiving the compensation fixed by this order, when, on February 25, 1921, it filed its application for a reexamination of the facts and readjustment of the compensation. Thereupon the commission entered an order that the proceedings be reopened for such further hearing as they might direct. New and additional evidence having been introduced, different from that on which the order of December 23, 1919, had been based, the commission made a report under date of December 13,1923, stating, among other things, it was their opinion that in a proceeding upon application for a reexamination “ under the act of July 28, 1916,” they had “ authority to establish rates only for the future and not for the past.” *121 The carriers’ “ request for findings as to the past ” was therefore denied. They accordingly made an order establishing a schedule of rates on and after December 13, 1923, but made no order as to the period prior to that date. Following this order there were applications by the carriers and by the Government, set forth more at length in the findings, with the result that on January 12, 1925, a report was made by the commission to the effect that the rates of mail pay for the service rendered “ on and after February 25, 1921,” the date of the application, were not fair and reasonable, and that the rates mentioned in the order of December 13, 1923, were fair and reasonable rates for the service rendered on and after February 25, 1921. No order was made, however, fixing the new rates for the period in question until their report on December 8, 1925, when the commission, 'affirming their previous findings as to rates, issued an order establishing such rates as fair and reasonable with respect to the plaintiff herein for the period from February 25, 1921, to December 13, 1923, that being the period in question. By an application of the rates prevailing before these dates, the plaintiff had been paid a large sum, but if entitled to receive for the period in question the rates found and ordered by the commission, there is due the carrier the additional amount of $724,718.51.
The contention of the parties turns, upon the authority of the commission to make their order of December 8, 1925, fixing the schedule of rates as the fair and reasonable compensation to which the carrier was entitled from February 25, 1921, the date of the filing of the application therefor to December 13, 1923, from which date the new rates had in fact been applied, and the further contention that in any event this court is without jurisdiction in the premises.
1. We think the court has jurisdiction because the carrier is asserting a claim founded upon a law of Congress.
When by the act of July 28, 1916, all railway common carriers were “ required ” to transport such mail matter “ as may be offered *for transportation by the United States in the manner, under the conditions, and with the service prescribed by the Postmaster General,” and further pro *122 vided a severe penalty for any railroad company refusing to perform the service, it became not only proper, but necessary, that provision be made for' compensating them, and the act declared that they should be entitled to receive fair and reasonable compensation for such transportation and for the service connected therewith. To this end the Interstate Commerce Commission was empowered and directed, “ as soon as practicable,” to fix and determine from time to time the fair and reasonable compensation which the act declares the carrier is entitled to receive. The basis for such determination is stated and the method of procedure is prescribed by the act, and it is also provided that when the commission shall establish by order a fair and reasonable rate or compensation to be received at such stated times as may be named in the order, the Postmaster General should pay the same. Provision is made for reexaminations, on application of the Postmaster General, or any carrier after the lapse of six months “ from the entry of the order assailed ” and thereupon substantially similar proceedings as those leading up to the order assailed, are to be had “ with respect to the rate or rates for service covered by said application.” The commission has determined and ordered that for the period in question the carrier was entitled to a stated compensation, the Postmaster General has refused to pay this compensation, or at least a large part of it, and assuming, for the argument, that this order was authorized, where can the carrier get relief in the situation in which it thus finds itself unless it may sue in the Court of Claims ? The act does not contemplate a refusal on the part of the Government’s agents to pay the compensation ordered by the commission, but does contemplate compliance by the payment of the same. As generally stated, the rule is that where the statute creates a right against the United States, but does not furnish the remedy, it may be found in the Court of Claims.
The authorities are carefully reviewed in Foster's case, 32 C. Cls. 170, 185, where conclusions are ..stated, among them that where an officer authorized to determine the claim allows it but the accounting officers or the Secretary of the Treasury *123 refuses to give effect to the award, an action thereon will lie in this court. In Newcomber's case, 51 C. Cls. 408, the later cases are reviewed and a like conclusion is reached. In Kaufman's case, 11 C. Cls. 659, the facts showed that the Commissioner of Internal Revenue had determined that the party was entitled to a refund and awarded an allowance, but the Treasury refused to carry out the award by making payment, and the court held it had jurisdiction of the suit brought to recover the award. Upon appeal to the Supreme Court, 96 U. S. 567, it was said (p. 569) : “ The claim has been presented to and allowed by the proper officer. The claimant has pursued the statutory remedy to the end. He is satisfied with the decision that has been given, and insists upon the payment which the Government has undertaken to make. No special remedy has been provided for the enforcement of the payment, and consequently the general laws which govern the Court of Claims may be resorted to for relief, if any can be found applicable to such a case. * * * Here the right has been given and a liability founded upon a law of Congress created. Of such liabilities the Court of Claims has jurisdiction, and no other remedy has been provided.” A similar question arose in United States v. Savings Bank, 104 U. S. 728, and it was again held that where the commissioner had ascertained the amount due and payment was not made by reason of the refusal of any of the officers of the department to pass or pay the claim, after its. allowance by the commissioner, “ the allowance may be used as the basis of an action against the United States in the Court of Claims, where it will be primla facie evidence of the amount that is due, and put on the Government the burden of showing fraud or mistake.” Such a claim, it was said (p. 733), was founded on a law of Congress within the meaning of that term as used in defining the jurisdiction of the court. In a somewhat different form the question again arose in Weld's case, 23 C. Cls. 126. Weld & Company had recovered judgment in the Court of Commissioners of Alabama Claims. An act provided that such judgments should be paid out of the sum of money that had been paid to the United States pursuant to article 7 of the treaty of Washington, while a later act provided how ,the account should be stated by *124 accounting officers for the purpose of distribution among judgment creditors. This court held and the ruling was affirmed by the Supreme Court, 127 U. S. 51, 57, that the claim was “ founded upon a law of Congress.” In Medbury’s case, 173 U. S. 492, reversing the judgment of this court, the primary question was whether the Court of Claims had jurisdiction; and the Supreme Court, recognizing the rule that where a special right is given by statute and in that statute a special remedy for its violation is provided, the statutory remedy in such case is the only one, holds (p. 498) that such principle had no application to this particular statute, “ because the statute does Hot, in our judgment, within the meaning of the principle mentioned, furnish a remedy for a refusal to grant the right given by the statute.” In the case of T. A. Gillespie Go., 60 C. Cls. 923, this court held that it had jurisdiction, as of a claim founded on a law of Congress, of an award made by the Secretary of War under the Dent Act, payment of which had been refused. Considering this act of July 28, 1916, we said in Missouri Pacific Railroad Go. ease, 59 C. Cls. 524, 530, that if the Post Office Department had refused to pay the compensation fixed by the commission it could have been urged that an action therefor was based upon a law of Congress directing that payments be made in accordance with the commission’s decision. We need not multiply decisions. The jurisdiction of this court to determine the numerous cases' seeking to recover taxes paid where the commissioner has refused to refund the same is sustained because the claim is founded upon a" law of Congress. See also United States v. Emery, 237 U. S. 28; Evoslef case, 237 U. S. 1, 10; McLean case, 226 U. S. 374; Chicago & Eastern Illinois Ry. Go., 63 C. Cls. 585.
In the instant case, the statute empowers the Interstate Commerce Commission to determine the fair and reasonable compensation, but when this has been done the statute is silent as to the enforcement of their judgment if payment be refused. We have no doubt that the Court of Claims has jurisdiction in such case.
2. The next defense urged goes to the power of the Interstate Commerce Commission to make the order applicable to the period in question, the Government contending that *125 the commission, may not issue an order “ effective retroactively,” and that the order relating back to the date of the carriers’ application for reexamination of the rates or compensation is unauthorized. At the expense of a repetition of references already made to the act of July 28, 1916, recourse must be had to the terms of the statute. There can be no doubt that the commission was made a special tribunal to fix and determine, from time to time, the reasonable rates and compensation for the service the carriers were required by the act to render. It alters the system of railway mail pay existing at the date of the act. Generally speaking, the relation between the Post Office Department and the railway mail carriers had been determined by contract. See Kansas City, Mexico & Orient Railway Co.—The Mail Divisor cases—53 C. Cls. 258, 251 U. S. 326. Citing a number of cases we said, in these Divisor cases, that the railroad companies were “until the act of July, 1916,” free to accept or refuse the terms proposed by the Postmaster General for the transportation of mails. In New York, etc., Railroad Co., 251 U. S. 123, 127, it is said: “We think it must be treated as settled doctrine that prior to the act of July 28, 1916—with the exception of certain roads aided by land grants — railroads were not required by law to carry the mails.” The act provided a different method.' Its language is clear: “All railway common carriers are hereby required to transport such mail matter as may be offered for transportation by the United States, in the manner, under the conditions, and with the service prescribed by the Postmaster General.”. It is made unlawful for any such company to refuse and heavy penalties are prescribed for any such refusal. It can hardly be affirmed that the carriers were any longer “ free to accept or refuse ” the terms offered by the Postmaster "General. Having thus required a service, the act provides for the determination of just compensation. “ Seasonable compensation and just compensation mean the same thing.” Sweet v. Rechel, 159 U. S. 380, 400. The omission from the act of some provision for determining fair compensation might have left it subject to serious objections. See Sweet v. Rechel, supra; Monongahela Navigation *126 Co. v. United States, 148 U. S. 312; Chicago, Burington & Quincy Railroad Co. v. Chicago, 166 U. S. 226, 236. But provision is made in that the act prescribes that the carriers “shall be entitled to receive fair and reasonable compensation for such transportation and for the service connected therewith.” The determination of this fair and reasonable compensation is confided to the Interstate Commerce Commission. It is recognized that there may be a distinction between the required service and the ordinary transportation business of the railroads, and the commission is enjoined that, in fixing and determining the fair and reasonable rates for this service, the relations of the parties and the nature of the service shall be considered. It is provided that “ pending the decisión ” of the commission, the existing method and rates of railway mail pay should remain in effect. The procedure to be followed by the commission for the ascertainment of the rates and compensation is stated, and having concluded the hearing, “ the commission shall establish by order a fair, reasonable rate or compensation to be received at such stated times as may be named in the order for the transportation of mail matter and the service connected therewith,” and during the continuance of the order such rate or compensation shall be paid. In virtue of this act, the commission after full investigation and hearing of the parties made their report on the 23rd day of December, 1919, and on the same day entered their order providing “the fair and reasonable rates of payment for transportation of mail matter as of November 1, 1916, and to January, 1, 1918,” as stated in the order and further that the fair and reasonable rates on and after January 1, 1918, should be 25 per cent additional to the rates prescribed as of November 1,1916.
The act authorized either the Postmaster General or the carrier “ after the lapse of six months ” from the entry of an order to assail it by applying for a reexamination and thereupon substantially similar proceedings are to be had “ with respect to the rate or rates for service covered by said application ” as are prescribed for the prior examination. The carrier in this case made application in accordance with this provision, filing the same on February 25, 1921. It *127 followed the course detailed earlier in this opinion. The commission made a report on December 13, 1923, and entered an order establishing a schedule of rates effective from and after that date, but stated in their report that in their opinion they had “ authority to establish rates only for the future and not for the past.” It was not until December 8, 1925, that the commission ordered that the rates and compensation ascertained and determined by their order of December 13, 1923, should be effective from and after February 25, 1921, the date of the filing of the carriers’ application. This order responded to the prayer of the application. In their initial order of December, 1919, the commission had established one rate or compensation for the period from November 1, 1916, to January 1, 1918, and in doing this had done what the statute required. They also ordered a different rate or compensa'tion from and after January 1, 1918. Why this latter action was not the fixing of a rate for the past is not made clear when it is seen that the order was made nearly two years after the effective date, and that the commission had the authority to make it there is and can be no question raised. But authorized as they are to consider applications for a change in rate or compensation, and to grant relief thereon, the contention is,’ as stated already, that the order may not make provision for compensation from the date the earlier order is assailed. If this be sound it is manifest that in almost every application for relief from existing rates there must be a period during which the examination by the commission proceeds when the carrier will not receive the compensation it would otherwise be accorded, with the result that the carefully provided plan for determining this compensation of carriers is ineffective for the purposes it was designed to accomplish. In the instant case there is a period of about two years involved, but the final order made effective for this period was not made until more than four years after the proceeding was inaugurated by application duly filed._ The act provides for a reexamination of the rates for service “ covered by the application,” and the latter was filed in February, 1921. By this application the earlier order was “ assailed,” to use the language of the act. The commission *128 could determine that the rate or compensation being received was proper and sufficient or they could find the carrier was entitled to more and order that the same be paid. As the application initiated the proceeding, the order should relate to the time it was filed. The provision that the orders “ shall continue in force ” until changed by the commission after due notice and hearing does not limit the commission’s power to fix the rate on or after the date of the application. Their order, when made, changes the earlier order and becomes effective as stated by them. Nor is it any answer to this view to say, as the Government does say, that Congress reserved to itself the power of direction and allowance, which in this case was to be made through the Postmaster General and not by the commission. But Congress did not reserve any such, power to itself. It erected a tribunal or accepted one already -in existence to discharge a duty which was judicial in its nature, the ascertainment of reasonable compensation to carriers for services exacted by *statute. “ But this is a judicial and not a legislative question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character; but when the taking has been ordered, then the question of compensation is judicial.” Monongahela Navigation Company, 148 U. S. 312, 327. In our opinion, Congress not only did not attempt to reserve power in itself to determine the fair and reasonable compensation the carriers should receive for the service but it intended to place the entire matter in a tribunal fully equipped to perform the judicial duty involved. This duty having been discharged and the amount payable ascertained, the carrier is entitled to judgment. One of the reasons assigned for the nonpayment is the lack of appropriation, and this may be a sufficient reason for the accounting officers or the Postmaster General if the appropriations for the period in question were exhausted. But it furnishes no reason why this court may not X’ender its judgment for the amount due. We do not think the plaintiff can have judgment for interest on the deferred payments. We are not determining just compensation but are giving effect to an authorized order of the Interstate Commerce Commission. In such case the statute *129 forbids the allowance of interest. Sec. 177, Judicial Code, as amended. Cases cited in Liggett & Myers Co. case, 61 C. Cls. 693, 704.
Judgment will be entered accordingly. And it is so ordered.
Moss, Judge; Graham, Judge; and Booth, Judge, concur.