Booth, Chief Justice,
delivered the opinion of the court:
Defendant demurs to plaintiff’s petition, relying upon two assignments therefor. First, that the allegations of the peti *693 tion do not state a canse of action witbin tbe jurisdiction of the court, and second, that the facts alleged do not constitute a cause of action against the defendant.
Eight separate suits have been brought in this court by ■eight individual plaintiffs, claiming and designated as original locators.” Another suit is instituted by these same individuals jointly, and this case brought in the name •of the Revenue Oil Company, a corporation, makes ten separate proceedings involving the precise subject matter, and the determination of one will determine all.
The present plaintiff, Revenue Oil Company, sues as .assignee of and successor in title to whatever interests the original locators ” possessed in the claims herein asserted. The defendant concedes that the assignment of the claim by the “ original locators ” to the plaintiff is not within the prohibition of section 3477, Revised Statutes, which prohibits assignments of claims against the United States prior to judgment, and that the present plaintiff is entitled to sue.
The assignment to the plaintiff antedated the act of March 4, 1923, which legislation by its terms enabled the plaintiff for the first time to assert a claim. The act of March 4, 1923, is important and vital to the issues raised by the defendant and will be discussed hereafter.
The pertinent allegations of plaintiff’s petition disclose a situation and relationship arising out of the unsettled and controversial issue as to whether the United States, the State of Texas, the State of Oklahoma, and other intervenors were the owners of the lands lying within the bed of the Red River, a stream upon the border line between the States •of Texas and Oklahoma, a controversy which was finally settled and adjudicated by the Supreme Court in the case of Oklahoma v. Texas, 258 U. S. 574.
On January 1, 1919, Henry L. Roberts and seven associates, all citizens of the United States, entered as they claim, upon what they honestly and in good faith believed to be vacant, unappropriated and unreserved public lands, lying within the bed of the Red River, for the purpose and with the object of obtaining a patent thereof under the placer mining laws of the United States. The tract described contained 160 acres, more or less, part of the same lying north *694 and the remaining portion south of the medial line of the main channel of said river.
The petition states that on January 1,1919, and long prior to said date an acute controversy and dispute was known to-exist with respect to the ownership of the lands of which the above described tract was a part, between the States-above mentioned and the United States as well as others; that oil was discovered in the bed of the Red River in 1918 and as a consequence the lands therein were sought by numerous claimants, some asserting claims under the authority of the laws of the United States, others under the laws-of Texas and Oldahoma, and some seeking to maintain rights to claims by force of arms; that in the midst of this-conflict and confusion, augmented by litigation in the State and Federal courts, Henry L. Roberts and his associates,, “ original locators,” were, after they had caused the tract to be surveyed, staked oif, posted notices of their claims and' otherwise complied with the laws relating to obtaining said claims, precluded from doing more than attempting to begin oil drilling operations and developing said lands until in or about December, 1919.
The petition further alleges that on December 26, 1919, Roberts and his associates executed a lease of said lands to R. J. Baker, trustee, by the terms of which Baker, the lessee, was to go upon said lands, drill oil wells thereon, and develop the same, paying to said “ original locators ” a royalty of one-eighth of the oil produced from said wells; that Baker in December, 1919, succeeded in entering upon the lands, erected a derrick and other buildings thereon at a cost of $1,150, and maintained possession and occupancy thereof until the same were taken possession of by a reciever appointed by the Supreme Court following the institution of the suit of Oklahoma v. Texas (supra) in that court.
In March, 1920, the petition states and the facts are important, the Pacific-Wyoming Oil Company, a Wyoming corporation, as sub-lessee of a 20-acre tract out of the lands leased to Baker, trustee, in December, 1919, and lying south of the medial line of the main channel of the river, went upon said 20-acre tract, erected a derrick with which to drill an oil well, and had about completed said well when the *695 receiver appointed by the Supreme Court took possession of the same, and said well, thereafter known as “ Receiver’s Well #171,” had been drilled to a depth of about 1,575 feet at a cost and expense to said corporation in excess of $18,000.
The petition then proceeds to allege that the decision of the Supreme Court in the case of Oklahoma v. Texas, 258 U. S. 574 (supra), wherein it was held (1) that the north half of the bed of the Red River between Texas and Oklahoma was subject to the riparian rights of the north-bank meander lands, and (2) that the south half of the river bed was United States land located in the State of Oklahoma and not subject to any of the public land laws, thereby rendered the original locators, their lessee and sublessee, trespassers without color of title to lands of the United States.
It is then stated that the act of March 4, 1923, an act to be hereafter quoted and referred to, accorded to the plaintiff certain rights notwithstanding the decision of the Supreme Court with respect to the ownership of said lands;, that plaintiff complied with all the terms and conditions of the said act, and has been denied its lawful rights thereunder,, and that as a result of the decision of the Secretary of the Interior acting under said act plaintiff has suffered a loss of $899,023.13, royalties accruing from developed wells on lands claimed herein.
Finally it is said that plaintiff makes no claim to any portion of said tract of 160 acres leased to conflicting claimants for the same, but does claim for all that portion for which no conflicting claims were filed or allowed lying south of the bed of the river and which were developed and produced oil to the extent and in the amounts set out in detail. A. prayer is interposed for a discovery and accounting from the United States as to the proceeds derived from said lands subsequent to February 20, 1926, the plaintiff claiming the right to all of said proceeds subsequent to that date, less a one-eighth royalty payable therefrom to the United States. Interest on the sum is also claimed.
We have not set forth in detail all the facts alleged in the petition for the reason that many allegations are conclusions *696 of law and others argumentative and immaterial. It is enough to say in this connection that the material facts alleged are sufficient to present the issue of jurisdiction, and that in any event the controversy is narrowed to the act of March 4, 1923, without which the plaintiff would obviously be remediless. This suit is brought under section 145 of the Judicial Code, which as to our jurisdiction reads in part as follows:
“ First. All claims (except for pensions) founded upon the Constitution of the United States or any law of Congress, * *
The petition sets forth a status revealing to Congress the necessity of granting equitable relief to certain claimants who would by reason of a Supreme Court decision suffer ■substantial losses by way of actual good faith outlay, if the United States chose to rely upon said decision and finally ■close the controversy.
The act granting relief, i. e., the act of March 4, 1923 (42 Stat. 1448), reads as follows:
“ That the Secretary of the Interior is hereby authorized to adjust and determine the equitable claims of citizens of the United States and domestic corporations to lands and oil and gas deposits belonging to the United States and .situated south of the medial line of the main channel of Ned Biver, Oklahoma, which lands were claimed and possessed in good faith by such citizens or corporations, or their predecessors in interest, prior to February 25, 1920, and upon which lands expenditures were made in good faith and with reasonable diligence in an effort to discover or develop oil or gas, by issuance of permits or leases to those found equitably entitled thereto.
“ Seo. 2. * * * Leases and permits under this act may be granted to the assignees or successors in interest of the original locators or the original claimants in all cases where the original locators or original claimants have assigned or transferred their rights, but when leases or permits are granted to the assignees or successors in interest of the original locators or original claimants the said leases and permits .shall be subject to all contracts, not contrary to law or public policy, between the original locators or original claimants and their successors in interest.
“ In case of conflicting claimants for permits or leases under this act, the Secretary of the Interior is authorized to *697 grant permits or leases to one or more of them as shall be deemed just.
$$$$$$$
“ Sec. 4. * * * Of the proceeds of the oil and gas that have been produced or that may hereafter be produced by the receiver of said property, appointed by the Supreme Court of the United States, 12ya per centum as royalty shall be paid to the United States, and the residue after deducting and paying the expenses of the litigation incurred by the United States and the expenses of the receivership shall be paid to the person or corporation to whom may be granted a lease of the land on which said oil and gas were produced: Provided, That the Secretary of the Interior is authorized and directed to take such legal steps as may be necessary and proper to collect from any person or persons who shall not be awarded a permit or lease under this act an amount equal to the value of all oil and gas produced by him or them from any of said lands prior to the inclusion of said property in the receivership, except oil or gas used on the property for production purposes or unavoidably lost and except other reasonable and proper allowances for the expenses of production: * * *.
“ Sec. 5. That except as otherwise provided herein the applicable provisions of the act of Congress approved February 25,1920, entitled ‘An act to permit the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain,’ shall apply to the leases and permits granted hereunder, including the provisions of sections 35 and 36 of said act relating to the disposition of royalties: Provided, That after the adjudication and disposition of all applications under this act any lands and deposits remaining unappropriated and undisposed of shall, after date fixed by order of the Secretary of the Interior, be disposed of in accordance with the provisions of said act of February 25, 1920: * * *.
$ ‡ ‡ ‡ ‡
“ Sec. 1. That the Secretary of the Interior is authorized to prescribe the necessary and proper rules and regulations, and to do any and all things necessary to carry out and accomplish the purposes of this, act.”
Plaintiff admits that the above act confers exclusive jurisdiction upon the Secretary of the Interior to determine the facts with respect to the various claims necessary to bring them within the definition of equitable claims, as stated in section 1 of the act, and in deciding equities under section 2 of the act between conflicting claims, advancing a contention, *698 however, that exclusive jurisdiction was not conferred to determine what should constitute equitable claims or the class of persons intended to be benefited by the act, and that this court under section 145 of the Judicial Code possesses jurisdiction inasmuch as plaintiff’s claim is founded upon a law of Congress.
In order to ascertain with precision the gravamen of plaintiff’s complaint predicated upon what the Secretary of the Interior did not do, but which it is claimed he should have done, it is essential to set forth what he did do, as stated in and available from records of his actions referred to in the petition. The plaintiff filed with the Secretary, in the name of the original locators and/or their assignees and successors in interest, a claim for an oil and gas mining lease of the lands south of the bed of the river, and adduced proofs to sustain not only its right to a lease but to a proportional part of the royalties accruing to the receiver appointed by the Supreme Court by reason of oil operations thereon.
This claim, one among many others, was by the Secretary referred to the Commissioner of the General Land Office for consideration and report as to rights between rival claimants for leases and awards. Thereafter the Commissioner of the General Land Office reported that the mining laws, as interpreted by the standard authorities, should be adopted in determining said rights and that priority in location initiated in good faith, followed by possession of land claimed, ■expenditure of money thereon and diligent development work in an effort to discover oil, should determine the equities of claimants.
The Secretary then referred the report of the commissioner to a special committee appointed by him and this committee with respect to plaintiff’s claim reported it unfavorably in so far as the original locators, Roberts et al., were concerned. As to the 'Pacific-Wyoming Oil Company, the report recommended a lease to the same in the following language:
“ It appears that an equitable claim under the act of March 4, 1923, has been established as to the 20 acres held and developed by the Pacific-Wyoming Oil Company as lessee from H. L. Roberts et al., and that no development work was done *699 upon any other part of the Roberts claim which is in the .south half of Red River.
“ The application of H. L. Roberts et al., should be rejected in its entirety, for want of equities under the act of March 4, 1923, as should the application of R. J. Baker. Such interests as H. L. Roberts et ah, and R. J. Baker have in the 20 acres leased to the Pacific-Wyoming Oil Company are founded on contracts and can not be enforced by the •Secretary of the Interior, even though valid under the inuring clause in section 2 of the Act of March 4, 1923.”
On September 1, 1925, the then Secretary of the Interior rendered his final decision and award, by the terms of which a lease of 14.4 acres out of the 160-acre tract was awarded to the Pacific-Wyoming Oil Company, and out of the same tract leases were awarded to A. E. Pearson, Delta Oil Company, General Oil Company, and Burke-Divide Oil Company, the Secretary expressly holding that the awards made were based upon the superior equities of the claimants for the same, and no additional leases were awarded to any claimant for that portion of the 160-acre tract remaining after the allotments and awards just described.
On September 29, 1925, the Secretary, with respect to the application of the original locators, Roberts et al., held:
“After careful consideration of the application of these claimants and all the testimony, affidavits, briefs, and oral arguments presented in connection therewith, and upon consideration of a recommendation made with respect thereto, on July 10, 1924, by the Commissioner of the General Land Office, and a report and recommendation made on March [May] 29,1925, by a committee designated to hear oral arguments and to consider and report upon claims under the act, and after mature deliberation upon objections filed by the claimants to the recommendation of the committee, I have concluded and hereby find that these applicants have failed to establish an equitable claim as defined by the act of March 4, 1925 [March 4, 1923], and the application is hereby rejected.”
The Secretary of the Interior thereafter in administering the act of March 4,1923, advertised the lands involved herein for lease to the highest bidder, and they were afterwards leased to the Bell Oil Company, developed and operated by the company, and discovery is asked of the amount and value *700 of oil and gas produced by this company as a basis of judgment herein.
The proceedings before the Secretary and the findings and awards made demonstrate unquestionably that the controversy determined was one committed to his jurisdiction by the remedial act of March 4, 1923. The act conferred jurisdiction “ to adjust and determine the equitable claims of citizens of the United States.” True, it set forth that its scope embraced those who had in good faith entered thereon and incurred expenditures as well as exercised reasonable dilij-gence in an effort to discover oil thereon; but this provision, directory in character, may not be construed into a mandatory one, compelling the Secretary to award leases where such expenditures were made, irrespective of the substantial equities of the transaction, and even if the Secretary has misconstrued the act in this respect, no jurisdiction resides in this court under section 145 of the Judicial Code to review it.
Congress in enacting the statute gave to no individual claimants an express and specific right to leases. It created no enforceable liability with respect to individuals or corporations until a determination and award was made after a hearing. Claimants’ rights then attached for the first time. If the plaintiff had received an award and for some unforeseen reason it had been denied him afterwards, suit might have been instituted in this court under section 145 of the Judicial Code to recover for the injury. Here, however, our jurisdiction is invoked to not only review the decision of the Secretary and overrule it, but to go further and from the facts hold that under the act the plaintiff was entitled to an award.
The case we think is not comparable to many cases cited in plaintiff’s brief. It has long since been decided that where an act of Congress creates a right and provides therein for a special remedy, the remedy so provided is exclusive. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U. S. 165; Arnson v. Murphy, 109 U. S. 238; Barnet v. National Bank, 98 U. S. 555; Farmers' & Mechanics’ National Bank v. Dearing, 91 U. S. 29. In the Wilder case, supra, the Supreme Court said (p. 174) :
*701 “ It is true that there are no words of express exclusion of the right of individuals to act in the enforcement of the statute or of courts generally to entertain complaints on that subject. But it is evident that such exclusion must be implied for a twofold reason: First, because of the familiar doctrine that £ where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.’ Farmers’ & Mechanics’ National Bank v. Dearing, 91 U. S. 29, 35; Barnet v. National Bank, 98 U. S. 555; Oates v. National Bank, 100 U. S. 239; Stephens v. Monongahela Bank, 111 U. S. 197; Tenn. Coal Co. v. George, 233 U. S. 354, 359; * *
The rights referred to the Secretary were dependent for adjudication not alone upon a reconciliation of controversial and disputed facts, but the determination of equitable claims from such facts. The issue as to good faith, expenditure of funds, possession of lands, and the exercise of reasonable diligence in their exploitation, beyond doubt involved investigation of disputed facts and their application to the equities of the claims, a proceeding involving an exercise of discretion, the employment of the judicial function with respect to a controversy which the act did not as to any particular individual settle or attempt to settle. This court in Shook v. United States, 61 C. Cls. 816, in commenting upon a jurisdictional issue wherein sections of certain statutes authorized the accounting officer of the United States to settle claims, said (pp. 820-821) :
“ The act does not in terms confer authority on any tribunal other than that mentioned, and if the court has authority to proceed its power in that regard must rest upon the grant of power to it to hear and determine claims founded upon any law of Congress. Broad as the jurisdiction thus conferred appears to be, which, as was said by Chief Justice Nott in Foster’s case, 32 C. Cls. 170, 184, ‘ at first sight seems to include every claim created by statute,’ it was, as he adds, held at any early date that the provision is not so extensive as to include claims for the ascertainment of which a specific jurisdiction or tribunal has been erected. The principle as stated in Babcock’s case, 250 U. S. 328, 331, is that where a statute creates a right and provides a special remedy that remedy is exclusive. In elaboration of the rule thus stated the opinion in the Babcock case points out that where the decision of the spe *702 cial tribunal involves no disputed question of fact and the-denial of compensation is rested wholly upon the construction of the act, the jurisdiction of the Court of Claims to-review the decision may not be excluded, citing the Medbury case, 173 U. S. 492, 498, the McLean case, 226 U. S. 374, and others. In the McLean case this court followed ‘the broad principle declared in Medbury’s case,’ and held that there were essentially no disputed questions of fact before-the accounting officers; that the jurisdictional act carried a plain and simple direction to them to settle and adjust all back pay due the officer, and that the duties thus imposed were purely administrative. See McLean case, 45 C. Cls. 95, 99, 100. The Supreme Court took the same-view.”
The case, as we view it, is not within the rules held by the Supreme Court in United States v. Laughlin, 249 U. S. 440, or Medbury v. United States, 173 U. S. 492. In each, of the above cases the remedial acts gave to claimants a. positive enforceable right dependent only upon the establishment of certain facts before an official of the Government. If the facts brought the claimant within the granted statutory right the official was without discretion to do« aught else but allow the claim. Uniformly it has been held by this and the Supreme Court that where Congress fixes, an amount by way of compensation or refund to individuals-coming within a certain described status, and the officiaL charged with the administration of the law decides as a legaL proposition that, notwithstanding the undisputed facts entitling the claimant to the amount granted, the statute is-inapplicable, jurisdiction to recover is conferred upon this, court by section 145 of the Judicial Code. In the Laughlin case (supra) the court said (p. 443) :
“ In our view it was the intent of Congress, that the Secretary should have exclusive jurisdiction only to determine' disputed questions of fact, and that, as in other administrative matters, his decision upon the questions of law should be reviewable by the courts. In the case before us the factswere not and are not in dispute and were shown to the Secretary’s satisfaction; whether, as matter of law, they made-a case of excess payment, entitling claimant to repayment under the Act of 1908, was a matter properly within the' jurisdiction of the Court of Claims.”
*703 And in tbe Medbury case (supra) the court said (p. 497)
“ We can not suppose that Congress intended in such case to make the decision of the Secretary final when it was made-on undisputed facts.”
■Plaintiff’s controversy involves a disputation as to facts;no provision of the remedial act discloses in toto precisely all the facts which entitle the plaintiff to- relief. The act empowered the Secretary to determine not only the facts, but equitable claims to leases. The extent of the relief to be-afforded plaintiff was under the act to be determined by the Secretary from what in his judgment and opinion constituted an equitable claim, and obviously the act did not contemplate that claimants could contest his awards and opinions in the courts.
The report of the committee of Congress having the act of March 4,1923, as well as the debate indulged when before-the House, evidences that what was intended by the legislation was a reference of the subject matter to the Secretary of the Interior for final adjudication and settlement, a reference to a department of the Government particularly competent to deal with matters of this character, and with meticulous care and foresight the bill was so drafted as to afford prospective claimants a full and complete hearing;. “ a day in court,” as stated in debate.
The Secretary of the Interior in pursuance of his view of his jurisdiction under the act of March 4, 1923, considered' the claims filed, and in reaching his award in this case awarded a lease to the plaintiff of the specific tract upon which substantial development and operation of an oil well, was in process when the decree of the Supreme Court appointing a receiver to take over all the lands became effective. The lease awarded followed from proof of the facts recited' and the expenditure of a substantial sum of money. The Secretary did not award the original locators leases for tracts; of land where the proof failed to establish an equitable claim. No development had been accomplished thereon and no loss; suffered, and it is difficult to perceive the availability of a contention that the Secretary’s jurisdiction under the act. did not extend to finding what should constitute an equitable-. *704 claim or the persons entitled to awards. This, it seems to us, is precisely what Congress intended the Secretary to do, and to that end conferred upon him exclusive jurisdiction to do. Surely it is not within the jurisdiction of this court to hold that in the exercise of the jurisdiction conferred upon the Secretary he should hare resorted to an established rule that the occupation and development of a part of a claim through a lessee or sublessee operated to entitle the entire acreage in an entire claim to a lease. Additional points are discussed in the briefs. We will not discuss them, in view of our opinion upon the issue of jurisdiction. The demurrer will be sustained and the petition dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Gbeen, Judge, concur.